IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MARIA GUILLEN,

                    Plaintiff,

vs.                                    Case No. 10-2657-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

        The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot,

2

considering their age, education, and work experience, engage in
any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not
to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

This case has a very long history. Plaintiff filed applications for disability insurance benefits and supplemental security income on November 10, 2004 (R. at 15, 381). On April 22, 2008, administrative law judge (ALJ) George M. Bock issued his 1st decision (R. at 15-22). The ALJ found that plaintiff can perform past relevant work and other work in the national economy, and was therefore not disabled (R. at 20-22). Plaintiff

4

sought judicial review of the ALJ decision. On January 29, 2010, the court issued an order reversing the decision of the Commissioner and remanding the case for further hearing (R. at 379, 380-402; Guillen v. Astrue, Case No. 08-2590-CM (hereinafter referred to as Guillen I). In Guillen I, the court found reversible error at step two of the sequential evaluation process, and in the ALJ's assessment of plaintiff's mental RFC (R. at 380, 390-401).

On August 9, 2010, ALJ George M. Bock issued his 2nd decision (R. at 364-374). Plaintiff alleges that she has been disabled since May 9, 2002 (R. at 364). Plaintiff is insured for disability insurance benefits through December 31, 2007 (R. at 364). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability (R. at 366). At step two, the ALJ found that plaintiff had the following severe impairments since May 9, 2002: non-insulin-dependent, type II diabetes without evidence of any end organ damage and depression (R. at 366). The ALJ further determined that as of June 12, 2009, plaintiff had the following severe impairments: non-insulin-dependent, type II diabetes without evidence of any end organ damage; joint pain in multiple anatomical areas of undetermined etiology and depression (R. at 366-367). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 369).

5

After determining plaintiff's RFC (R. at 370), the ALJ found at step four that plaintiff is able to perform past relevant work prior to June 12, 2009 (R. at 372).  At step five, the ALJ found that plaintiff, prior to June 12, 2009, could perform other jobs that exist in significant numbers in the national economy (R. at 373).

The ALJ further determined that plaintiff had a more restrictive RFC as of June 12, 2009 (R. at 372).  At step four, the ALJ found that plaintiff, as of June 12, 2009, could not perform past relevant work (R. at 373).  At step five, the ALJ found that plaintiff, as of June 12, 2009, could not perform other work that exists in significant numbers in the national economy (R. at 373).  Therefore, the ALJ concluded that plaintiff was not disabled prior to June 12, 2009, but became disabled as of June 12, 2009, and has continued to be disabled through the date of the decision (R. at 373).  Plaintiff has again sought judicial review of the ALJ decision.

## III.  Did the ALJ err in his consideration of the medical opinion evidence regarding plaintiff's mental RFC?

On April 30, 2005, Dr. Michael Schwartz conducted a disability determination examination on the plaintiff (R. at 204-206).  His report included the following:

> COGNITION: She was unable to remember any of three words after five minutes...She was unable to do serial 7's. She was unable to do

6

three serial 3's. Overall, it was difficult
to assess her cognitive functioning given the
language barrier and she did seem somewhat
agitated. Given her background of having a
driver's license and working successfully, I
believe she has at least of low average
intelligence. She may be having some
difficulty with memory at the present time as
indicated by her being able to remember any
of three words after five minutes.

SUMMARY AND CONCLUSION: The patient is a
50-year-old married Hispanic female
describing generalized arthralgias and
headaches. She appears to be mildly
depressed. She may have some memory
difficulty indicated by being able to
remember any of three words after five
minutes.

POTENTIAL FOR COMPETITIVE EMPLOYMENT: **She may
have difficulty remembering work location and
procedures and understanding and following
simple directions at the present time.**
Although she seems to be mildly depressed, I
do not believe that her emotional
functioning would interfere with her being
able to work if she were able to do so
physically.

DIAGNOSTIC IMPRESSION:

  AXIS I: Major Depression, single episode,
mild intensity.
Cognitive Disorder, possible memory problems
as indicated by being unable to
remember any of three words after five
minutes (provisional)...

  AXIS IV: Psychosocial stressors: Physical
limitations and pain.

  AXIS V: Global Assessment of Functioning
current = 60.
Highest Global Assessment of Functioning past
year = 60.

(R. at 205, emphasis added).

The ALJ stated the following regarding the report by Dr.

Schwartz:

> The examining psychologist, in his summary
> and conclusions, found the claimant to be
> mildly depressed and believed she might have
> some memory difficulty, difficulty
> remembering work locations and procedures as
> well as understanding and following simple
> directions. At the time of that evaluation,
> although she seemed to be mildly depressed,
> he did not believe that her emotional
> function would interfere with her being able
> to work if she were able to do so physically.
> It is noteworthy that she admitted that she
> was still taking care of her grandchildren at
> that time. The Axis I diagnosis was major
> depression, single episode, mild intensity
> with a (provisional) diagnosis of a possible
> cognitive disorder with possible memory
> problems based solely on her presentation
> during that evaluation. Global assessments of
> functioning of 60 current and 60 past year
> were generated which must be considered in
> conjunction with the Axis I diagnosis of
> major depression of mild intensity. When
> weighing this evidence, the undersigned
> concludes that the claimant symptoms are more
> consistent with mild functional impairment
> than with moderate functional impairment.
> This conclusion is based on the claimant's
> continued work as a housewife and caretaker
> for 4 to 6 grandchildren in her home; her
> embellished physical presentation during her
> examination in January 2005, where her
> functional abilities were much improved when
> she did not know she was being observed and
> her feigned inability to speak English, which
> is refuted outright with her demonstration of
> her ability to speak English on hospital
> admission in July 2008.

(R. at 369).

On May 28, 2005, Dr. Fantz prepared a state agency mental

RFC assessment.  He found that plaintiff was moderately limited
in her ability to understand, remember and carry out detailed
instructions, and was also moderately limited in her ability to
maintain attention and concentration for extended periods (R. at
223-227).  The ALJ stated the following regarding this mental RFC
assessment:

> Giving the claimant great benefit of the
> doubt, the undersigned concludes that the
> moderate mental limitations by the reviewing
> psychologist, noted at page 5 in Exhibit 7F,
> are colorably credible. The reviewing
> psychologist's opinion, that from a
> psychological standpoint the claimant should
> be capable of gainful employment and
> psychologically able to handle simple
> and possibly intermediate level tasks, is
> generally consistent with the record.

(R. at 369).  The ALJ then made the following RFC findings for
the period prior to June 12, 2009:

> After careful consideration of the entire
> record, the undersigned finds that prior to
> June 12, 2009, the date the claimant became
> disabled, the claimant had the residual
> functional capacity to perform medium work as
> defined in 20 CFR 404.1567(c) and 416.967(c)
> except she could lift a maximum of 50 pounds
> on an occasional basis with 25 pounds
> frequently, stand or walk for six of eight
> hours, sit for six of eight hours and
> mentally she is limited to 1 to 2 step,
> simple, repetitive tasks with non-detailed
> instructions requiring no work with the
> public and no reading or writing in English.

(R. at 370).

As noted above, Dr. Schwartz stated that plaintiff:

> may have difficulty remembering work location

9

> and procedures and understanding and
> following simple directions at the present
> time.

(R. at 205).  The ALJ did not include this limitation in his RFC

findings.  At the hearing, the vocational expert (VE) was asked

the following questions:

> Q (by counsel): Okay. All right. Let's assume
> an individual with the vocational factors of
> the claimant who has difficulty remembering
> work locations and procedures and
> understanding and following simple
> directions. Would such an individual be
> capable of performing the jobs that you have
> identified?
>
> A (by vocational expert): No.
>
> Q: Would they be capable of performing any
> work in the national economy?
>
> A: No.

(R. at 670).

In his brief, defendant asserted that the assessment by Dr.

Schwartz supported the ALJ's RFC findings (Doc. 12 at 18).  In

response, plaintiff indicated in her brief that the statement by

Dr. Schwartz that plaintiff "may have difficulty remembering work

location and procedures and understanding and following simple

directions at the present time" (R. at 205) does not support the

ALJ's decision because these limitations are not reflected in the

ALJ's RFC findings (Doc. 13 at 4).  Plaintiff correctly points

out that these limitations by Dr. Schwartz are not reflected in

the ALJ's RFC findings.  Furthermore, the ALJ offered no

explanation for not including these limitations by Dr. Schwartz in his RFC findings.  Whether or not to include these limitations by Dr. Schwartz is critical in this case because, as the VE testimony makes clear, these limitations by Dr. Schwartz would preclude all work.

In <u>Guillen I</u>, the court quoted the following language from SSR 96-8p:

> The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

(R. at 396; 1996 WL 374184 at *7).  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).  The assessment by Dr. Schwartz does not clearly support the ALJ's RFC finding; in fact, the ALJ's RFC finding leaves out a key limitation set forth in the report of Dr. Schwartz.  The RFC assessment thus conflicts with the opinions of Dr. Schwartz.  This limitation, according to VE testimony, would preclude all work.  Furthermore, the ALJ offered no explanation for not including this limitation in his RFC finding, in direct violation of SSR 96-8p.  In addition, the ALJ did not engage in any relative weighing of the opinions of Dr. Schwartz and Dr. Fantz, which is the same problem the court pointed out in <u>Guillen I</u> (R.

at 396, 399-401).  This is important in light of the fact that

the opinions of an examining medical source (i.e., Dr. Schwartz)

is generally given more weight than the opinions of a

nonexamining source (i.e., Dr. Fantz).  Robinson v. Barnhart, 366

F.3d 1078, 1084 (10th Cir. 2004).

What is even more troubling is that the ALJ's failure to

explain why he did not adopt this limitation by Dr. Schwartz is

the very same failure outlined by the court in Guillen I (R. at

396-398).  In Guillen I, the court indicated that:

> Regarding employment potential, Dr. Schwartz
> opined plaintiff might have difficulty in
> remembering work location and procedures, and
> in understanding and following simple
> directions.

(R. at 397).  The court then held as follows:

> Moreover, the ALJ neither accepted nor
> rejected Dr. Schwartz's suggested
> limitations.  He simply ignored them.  This
> is error requiring remand for proper
> consideration of Dr. Schwartz's opinion in
> accordance with the regulations and SSR 96-5p
> [opinions from a medical source must not be
> ignored, and will be evaluated by the
> Commissioner in accordance with factors
> contained in the regulations, R. at 396] and
> SSR 96-8p as discussed above.

(R. at 398).

Although the ALJ in his 2nd decision did mention the

limitation in Dr. Schwartz's report that plaintiff may have

difficulty remembering work locations and procedures and

understanding and following simple directions at the present time

(R. at 369), the ALJ, as in <u>Guillen I</u>, did not indicate what
weight, if any, he was according to this opinion.  In violation
of SSR 96-8p, and the clear mandate of the court in <u>Guillen I</u>,
the ALJ failed to explain why this limitation was not included in
plaintiff's RFC findings.  Therefore, as in <u>Guillen I</u>, this is
clear error requiring remand for proper consideration of the
opinions of Dr. Schwartz in accordance with the regulations and
rulings of the agency, as set forth above and in <u>Guillen I</u>.  On
remand, the court expects the defendant to fully comply with the
mandate of this court.  The defendant is not entitled to
adjudicate a case ad infinitum until it correctly applies the
proper legal standard and gathers evidence to support its
conclusion.  <u>Sisco v. United States Dept. of Health & Human
Services</u>, 10 F.3d 739, 746 (10th Cir. 1993).

    There is a further problem with the ALJ's consideration of
the opinions of Dr. Schwartz.  The ALJ noted that Dr. Schwartz
found a GAF of 60 (R. at 369); the court in <u>Guillen I</u> stated that
a GAF score of 60 suggests moderate difficulty with occupational
functioning (R. at 397, 394 n.2).  However, the ALJ stated that
plaintiff's symptoms are more consistent with mild functional
limitations than with moderate functional limitations (R. at
369).  The ALJ went on to state that:

        This conclusion is based on the claimant's
        continued work as a housewife and caretaker
        for 4 to 6 grandchildren in her home...

13

(R. at 369), as well as her embellished physical presentation and feigned inability to speak English (R. at 369).  This allegation of plaintiff's care of her grandchildren to discount her claims and the report of Dr. Schwartz is repeated throughout the ALJ decision:

> [From a treatment note dated November 19, 2003]: she watches her grandchildren, ages 12, 11, 7 and 6.  This level of activity is essentially the equivalent of daycare work and clearly is inconsistent with disability...
>
> It was again noted...that the claimant was working as a housewife and taking care of four grandchildren in February 2004...
>
> [From a treatment note in March 2004]: it was noted that the claimant was at that time watching 6 grandchildren in her home.
>
> ..........
>
> It is noted, however, that the claimant continued to be the caretaker for 4 to 6 grandchildren in her home well after her alleged onset date of disability.  This work activity is inconsistent with the claimant's allegations.
>
> ..........
>
> Recommendations for exercise are inconsistent with the claimant's allegations of fatigue as is the claimant's ability to take care of 4 to 6 grandchildren in her home...
>
> She has alleged that she could not afford treatment yet she admits her husband works and she is able to take care of 4 to 6 grandchildren in her home.

(R. at 367, 371, 372).  Finally, in referencing the report of Dr.

14

Schwartz from May 2005, the ALJ stated that:

> It is noteworthy that she admitted that she
> was still taking care of her grandchildren at
> the time.

(R. at 369).

The problem is that the ALJ misstated the record regarding
plaintiff's care of her grandchildren.  The report of Dr.
Schwartz in fact states the following:

> [Plaintiff] gets upset that she cannot do
> what she used to do.  When asked what those
> things are, she states...take [care] of her
> grandchildren.

(R. at 204).  In a report dated December 2, 2004, plaintiff
stated that she is no longer able to take care of her
grandchildren because of her limitations (R. at 115), indicating
that she cannot watch them without one of her children around (R.
at 121).  Plaintiff testified on December 10, 2007 that she has
not babysit her grandchildren since 2004 or 2005 because she felt
she could not take care of them anymore (R. at 344).  Finally,
Dr. Miles reported in a psychological evaluation in November 2008
that plaintiff indicated that "her husband mostly cares for their
seven grandchildren and her grandchildren wash the dishes" (R. at
562).  The ALJ does not point to any evidence that plaintiff
continued to work as a caretaker for her grandchildren after 2004
or 2005, and clearly erred when he stated that the report of Dr.
Schwartz indicated that plaintiff admitted that she was still
taking care of her grandchildren at that time.  In fact, the

15

report of Dr. Schwartz indicates the exact opposite, that she can no longer take care of her grandchildren.  For this reason, on remand, the ALJ will need to reevaluate the report of Dr. Schwartz and plaintiff's allegations in light of this evidence.

There is also a problem with the ALJ's consideration of the opinions of Dr. Fantz.  The ALJ referenced the mental RFC assessment by Dr. Fantz, indicating that the moderate limitations by him "are colorably credible" (R. at 369).  The ALJ limited plaintiff to simple tasks, which is consistent with the report of Dr. Fantz.  However, Dr. Fantz also indicated that plaintiff had a moderate limitation in the ability to maintain attention and concentration for extended periods (R. at 223).  Nonetheless, the ALJ never mentioned this limitation, and the ALJ offered no explanation for not including this limitation in his RFC findings.  As noted above, according to SSR 96-8p, if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.[1]

In the case of <u>Martinez v. Astrue</u>, 2011 WL 1549517 at *5-6 (10th Cir. Apr. 26, 2011), the ALJ included in the claimant's RFC some, but not all, of the limitations found by an examining medical source.  The ALJ simply ignored some of the limitations

---

[1]Defendant erroneously stated in his brief that the assessment or opinions by Dr. Fantz supports the ALJ's RFC findings (Doc. 12 at 12, 18).  However, the ALJ, without explanation, failed to include a limitation set forth by Dr. Fantz in his RFC findings.

from the medical source.  The court held that the ALJ erred by failing to include all of the limitations found by the medical source without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight."  The court held that the ALJ may have had reasons for giving great weight to some of the limitations set forth by the medical source, while rejecting other limitations.  However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations.  See also Lodwick v. Astrue, Case No. 10-1394-SAC (Dec. 13, 2011; Doc. 19 at 7-11)(ALJ erred when he gave "substantial weight" to medical source opinion, but, without explanation, did not include some of the limitations set forth by the medical source; court listed numerous cases with same ruling).  As in Martinez, the ALJ erred in this case by failing to include all of the limitations found by the medical source without explaining why he rejected or failed to include the moderate limitation in plaintiff's ability to maintain attention and concentration for extended periods.  On remand, the ALJ must comply with SSR 96-8p by explaining why his RFC findings did not include this limitation by Dr. Fantz.

Finally, on remand, the ALJ must consider the opinions of Dr. Schwartz and Dr. Fantz in light of the psychological evaluation by Dr. Miles (R. at 560-563).  Dr. Miles stated that

plaintiff had "observed difficulty with attention/concentration"
and "demonstrated difficulty with short-term memory" (R. at 562).
Although Dr. Miles opined that plaintiff could obtain and
maintain employment, he diagnosed plaintiff with major depressive
disorder, severe with psychotic functions (R. at 563).  Dr. Miles
also assessed plaintiff with a GAF of 50 (R. at 560).[2]  The ALJ
failed to even mention the evaluation by Dr. Miles in his
decision.

**IV.  Did the ALJ err by failing to expressly discuss the severity
of some of plaintiff's impairments or their impact on plaintiff's
ability to work?**

At step two, the ALJ found that plaintiff had severe

---

[2]GAF (global assessment of functioning) scores can be found
in the <u>Diagnostic and Statistical Manual of Mental Disorders</u>.
The scores in this case represent the following:

> 41-50: **Serious symptoms** (e.g., suicidal
> ideation, severe obsessional rituals,
> frequent shoplifting), **OR any serious
> impairment in social, occupational, or school
> functioning** (e.g., no friends, unable to keep
> a job) (emphasis in original).

<u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR)
(4th ed., text revision, American Psychiatric Association 2000 at
34) (emphasis in original).  Standing alone, a low GAF score does
not necessarily evidence an impairment seriously interfering with
a claimant's ability to work.  A claimant's impairment might lie
solely with the social, rather than the occupational sphere.  A
GAF score of fifty or less, however, does suggest an inability to
keep a job.  For this reason, such a GAF score should not be
ignored.  <u>Lee v. Barnhart</u>, 117 Fed. Appx. 674, 678 (10th Cir.
Dec. 8, 2004).

impairments of diabetes and depression prior to June 12, 2009 (R. at 366). The ALJ did not mention if other impairments, including diabetic neuropathy, migraine headaches, osteoarthritis with joint pain, cataracts, bilateral carpal tunnel syndrome, or autoimmune disorder were severe impairments. Plaintiff alleges that the severity of these physical impairments and their impact on plaintiff's ability to work should have been discussed by the ALJ (Doc. 9 at 48-51).

The burden of proof at step two is on the plaintiff. <u>See Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997); <u>see Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[3] <u>Williams</u>,

---

[3]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004).

844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).

Plaintiff has failed to point to any medical evidence which states or indicates that these impairments would have more than a minimal effect on plaintiff's ability to perform basic work activities.  Therefore, plaintiff failed to meet his burden of proof on this issue.

Even assuming plaintiff met his burden of proving that one or more of these impairments were severe impairments, the issue before the court would be whether it is reversible error if the ALJ fails to list all the severe impairments at step two.  In Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July 8,

20

2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  In <u>Hill v. Astrue</u>, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two.  The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

In making his RFC findings, the ALJ stated that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  The ALJ also indicated that he considered the opinion evidence (R. at 370).  Furthermore, the ALJ acknowledged that in making an RFC finding, he "must consider

all of the claimant's impairments, including impairments that are
not severe" (R. at 366).  In light of the fact that the ALJ found
other severe impairments at step two, considered all symptoms and
evidence when making RFC findings for the plaintiff, considered
all of plaintiff's impairments, including non-severe impairments
when making his RFC findings, and the failure of plaintiff to
cite to medical opinion evidence that plaintiff has limitations
from these impairments that were not included in the ALJ's RFC
findings, the court finds no reversible error by the ALJ in his
consideration of plaintiff's physical impairments.

**V.  Did the ALJ err in his consideration of plaintiff's credibility?**

As noted above, the ALJ clearly erred with his erroneous
assertions that plaintiff continued working as a caretaker for 4
to 6 grandchildren, even though the record indicates that
plaintiff was unable to continue working as their caretaker after
2004 or 2005.  This alone will require new credibility findings
when this case is remanded.

The ALJ found that plaintiff's allegation of being unable to
communicate in English was not credible in light of the fact that
a medical report showed that plaintiff "is primarily Spanish-
speaking but communicates fairly well in English" (R. at 525).
The court will not reweigh the evidence or substitute its
judgment for that of the Commissioner.  Hackett v. Barnhart, 395

22

F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d
903, 905, 908, 909 (10th Cir. 2002).  Although the court will not
reweigh the evidence, the conclusions reached by the ALJ must be
reasonable and consistent with the evidence.  See Glenn v.
Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm
if, considering the evidence as a whole, there is sufficient
evidence which a reasonable mind might accept as adequate to
support a conclusion).  The court finds that the record provides
sufficient evidence to support this finding by the ALJ.

     As noted above, the ALJ also stated that the fact that the
medical records recommend that plaintiff exercise is inconsistent
with plaintiff's allegations of fatigue (R. at 372).  However, an
ALJ is not entitled to *sua sponte* render a medical judgment
without some type of support for his/her determination.  The
ALJ's duty is to weigh conflicting evidence and make disability
determinations; he is not in a position to render a medical
judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan.
2002).  The ALJ failed to cite to any medical or other credible
evidence supporting his assertion that exercise is inconsistent
with plaintiff's allegations of fatigue.

     Finally, plaintiff argues that the ALJ erred when he held
that plaintiff has not provided a valid excuse for noncompliance
with treatment (R. at 372).  When this case is remanded, the ALJ
should consider plaintiff's testimony that she cannot afford food

needed for a diabetic diet because she and her husband's income

totals $797, she has no health insurance, and had applied for

medical assistance, but was still waiting to see if she can

qualify (R. at 659-660).  The ALJ should consider the mandate set

forth in SSR 96-7p, which states the following:

> On the other hand, the individual's
> statements may be less credible if the level
> or frequency of treatment is inconsistent
> with the level of complaints, or if the
> medical reports or records show that the
> individual is not following the treatment as
> prescribed and there are no good reasons for
> this failure. However, the adjudicator must
> not draw any inferences about an individual's
> symptoms and their functional effects from a
> failure to seek or pursue regular medical
> treatment without first considering any
> explanations that the individual may provide,
> or other information in the case record, that
> may explain infrequent or irregular medical
> visits or failure to seek medical treatment.
> The adjudicator may need to recontact the
> individual or question the individual at the
> administrative proceeding in order to
> determine whether there are good reasons the
> individual does not seek medical treatment or
> does not pursue treatment in a consistent
> manner. The explanations provided by the
> individual may provide insight into the
> individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7; cited with approval in Madron v.

Astrue, 311 Fed. Appx. 170, 178 (10th Cir. Feb. 11, 2009).  The

ALJ noted that there was no evidence that plaintiff had ever been

refused treatment or had explored either free or sliding scale

treatment (R. at 372).  However, plaintiff points out that the

medical record references some discussion with the plaintiff

regarding a sliding fee scale (R. at 619).

**VI.  Did the err in his finding at step four that plaintiff could perform past relevant work prior to June 12, 2009?**

Plaintiff also argues that the ALJ failed to make the required findings at step four.  The ALJ found at step four that plaintiff, prior to June 12, 2009, could perform past relevant work (R. at 372).  The ALJ further noted that the vocational expert testified that a person with plaintiff's limitations could perform thousands of other jobs in the national economy (R. at 373).  The court does not need to reach this issue because it may be affected by the ALJ's resolution of the case on remand.  <u>See Robinson v. Barnhart</u>, 366 F.3d 1078, 1085 (10th Cir. 2004).  However, the court will set forth the requirements for step four findings by the ALJ.

At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity.  <u>Henrie v. United States Dep't of HHS</u>, 13 F.3d 359, 361 (1993).  Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase

25

one.  At each of these three phases, the ALJ must make specific
findings.  <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1303 (10th Cir.
2007);  <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).[4]
An ALJ can comply with these requirements if he quotes the VE's
testimony with approval in support of his own findings at phases
two and three of the step four analysis.  <u>Doyal v. Barnhart</u>, 331
F.3d 758, 760-761 (10th Cir. 2003).  When the ALJ fails to make
findings at phase two of step four regarding the physical and/or

---

[4]In <u>Winfrey</u>, the court noted that the Secretary glossed over
the absence of the required ALJ findings by relying on the
testimony of the vocational expert (VE) that plaintiff could meet
the mental demands of his past relevant work, given his mental
limitations as found by the ALJ.  The court stated that this
practice of delegating to a VE many of the ALJ's fact finding
responsibilities at step four appears to be of increasing
prevalence and is to be discouraged.  The court went on to say as
follows:

> Requiring the ALJ to make specific findings
> on the record at each phase of the step four
> analysis provides for meaningful judicial
> review.  When, as here, the ALJ makes
> findings only about the claimant's
> limitations, and the remainder of the step
> four assessment takes place in the VE's head,
> we are left with nothing to review...a VE may
> supply information to the ALJ at step four
> about the demands of the claimant's past
> relevant work...[but] the VE's role in
> supplying vocational information at step four
> is much more limited than his role at step
> five...Therefore, while the ALJ may rely on
> information supplied by the VE at step four,
> the ALJ himself must make the required
> findings on the record, including his own
> evaluation of the claimant's ability to
> perform his past relevant work.

<u>Winfrey</u>, 92 F.3d at 1025.

26

mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis.  <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); <u>Frantz v. Astrue</u>, 509 F.3d at 1303-1304; <u>Kilpatrick v. Astrue</u>, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.).  However, when the ALJ makes proper findings at step five, any error at step four will be deemed harmless error.  <u>Martinez v. Astrue</u>, 316 Fed. Appx. 819, 824 (10th Cir. Mar. 19, 2009); <u>see</u> <u>Murrell v. Shalala</u>, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

IT IS THEREFORE ORDERED that the judgment of the Commissioner that plaintiff was not disabled prior to June 12, 2009 is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 30th day of January, 2012, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge